UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SHELBY L. STEPP,**

    **Plaintiff,**

vs.                                          **Case No.: 8:11-CV-1729-T-30EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social**
**Security Administration,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned affirms the Commissioner's decision and dismisses this case.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth

---

[1] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**Background**

On July 10, 2007, Plaintiff filed an application for DIB, alleging a June 22, 2005 onset date. (T 106-08)[2] Plaintiff's disability insured status expired on December 31, 2005. (T 119) The application was denied initially and upon reconsideration. (T 59-62, 65-70) An administrative hearing was held on August 11, 2009. (T 26-58) Fifty-two years old at the time of the hearing, Plaintiff has a high school and some college education and past relevant work experience as a medical secretary and research assistant. (T 30, 32-33, 50-51)

On September 3, 2009, an ALJ denied Plaintiff's application. (T 14-16) Although the ALJ found that Plaintiff's severe impairments included disorder of the lumbar spine and migraine headaches, these impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T 19-21) Despite these impairments, the ALJ determined that Plaintiff has the residual functional

---

[2] An ALJ denied a Plaintiff's prior application for DIB on June 21, 2005. (Dkt. 18 at 1) (T 17, 120)

capacity ("RFC") to perform sedentary work, but she needs the option of sitting or standing to perform her duties and requires the use of a monocane. (T 21)  The ALJ found that Plaintiff can occasionally bend, crouch, kneel, stop, squat, and crawl, but must avoid activities requiring the pushing and pulling of arm controls, ladders, unprotected heights, and the operation of heavy moving machinery. (Id.)

The ALJ found Plaintiff capable of performing her past relevant work as a research assistant and medical secretary. (T 23)  Alternatively, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as surveillance system monitor, ticket seller, and storage facility rental clerk. (T 23-24)  Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period. (T 24)  On June 6, 2011, the Appeals Council denied review of the ALJ's decision, making it the final decision of the Commissioner. (T 1-3)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## Analysis

Plaintiff claims that the ALJ erred by failing to properly evaluate: (1) the opinion and medical records of Plaintiff's treating physician, Dr. Arias; (2) the opinions of state agency consultants, Dr. Troiano and Mr. Morales; and (3) Plaintiff's testimony concerning her subjective complaints of pain and other symptoms. (Dkt. 16)  The Commissioner asserts that substantial evidence supports the ALJ's finding that Plaintiff was not disabled during the relevant period of June 22, 2005 through December 31, 2005. (Dkt. 18)  Because these issues implicate the medical evidence, a review of the record is necessary.

Due to injuries incurred as a result of two automobile accidents, Plaintiff was discharged from her job as a research assistant in September 2000. (T 32-34, 123-24)  Plaintiff received treatment from Ramona Arias, M.D. ("Dr. Arias"), Plaintiff's long-time primary care physician. (T 258)  On July, 7, 2003, Dr. Arias opined that Plaintiff could lift less than ten pounds, stand or walk for fifteen minutes, sit for two hours during an eight-hour workday, occasionally stoop or crawl, and never climb, balance, crouch, or kneel.  (T 276-77)[3]  Additionally, Dr. Arias limited Plaintiff's ability to reach, handle, and feel, and determined that she was unable to stand in the shower. (Id.)   When asked to identify the medical findings in support of her assessment, Dr. Arias indicated "per patient symptoms," and "per patient's answers" and the diagnosis of multiple herniated discs. (T 276-77)

On April 26, 2004, Dr. Arias indicated that Plaintiff had chronic back pain, but because Plaintiff declined surgery for her disc herniations, Dr. Arias referred Plaintiff to pain management. (T 200)  Dr. Arias observed on September 21, 2004 that Plaintiff used a cane to assist with walking. (T 199) From September 2004 through December 2004, Dr. Arias provided Plaintiff with prescriptions or samples of medications, including Vicodin and Celebrex for pain management and Relpax and Immitrex for migraines. (T 198-99)  By December 21, 2004, Plaintiff reported increased migraines and depression, and medical notes reveal that Plaintiff had suicidal ideation. (T 198)  As of May 19, 2005, Plaintiff's inability to obtain Medicaid insurance precluded her from having surgery for her herniated discs. (T 195)  Dr. Arias supplied Plaintiff with medication samples, including Relpax for migraines and Wellbutrin for depression. (Id.)

---

[3]  Dr. Arias' assessment is partially illegible regarding the number of hours Plaintiff is able to sit in an eight-hour workday. (T 277)  Plaintiff suggests that Dr. Arias opined that Plaintiff could sit for two hours, while the Commissioner contends Dr. Arias indicated thirty minutes. (Dkt. 16 at 3) (Dkt. 18 at 6)

4

The record indicates that Plaintiff had four appointments with Dr. Arias during the relevant period at issue, from June 22, 2005 through December 31, 2005. (T 193-95)  On July 13, 2005, Dr. Arias noted that Plaintiff had experienced lower back pain for five days, decreased motor and sensory functions, increased numbness, and referred her to a neurosurgeon and ordered an MRI. (T 195)  The July 18, 2005 MRI revealed large left posterolateral disc herniations at L5-S1 and L4-5 with moderate ventral effacement of the thecal sac and secondary narrowing of the left lateral neuroforamen. (T 202)  On August 9, 2005, Plaintiff had severe lower back pain with radiculopathy. (T 194)  Plaintiff saw Dr. Arias on October 10, 2005 regarding continued severe back pain secondary to disc disease. (Id.)  December 30, 2005 treatment notes indicate increased back pain and muscle spasms, a recent development of left arm pain and aching hands, and difficulty sleeping. (T 193)  Dr. Arias observed that Plaintiff exhibited radiculopathy symptoms and prescribed Vicodin and Flexeril with samples of Mobic, Wellbutrin, and Relpax. (Id.)

After December 31, 2005, Plaintiff continued to see Dr. Arias for treatment of her chronic back pain, fluctuating levels of depression, and migraine headaches. (T 190-92)  Dr. Arias saw Plaintiff six times in 2006, beginning with a visit on April 11, 2006 indicating continued severe radicular pain, more frequent migraines, and increased cramps and back spasms. (Id.)  On June 12, 2006, Dr. Arias noted limited movement, and on November 27, 2006, she noted decreased strength and right arm radicular pain. (T 190, 192)

In 2007, Plaintiff visited Dr. Arias on five occasions. (T 266-71)  On May 15, 2007, Dr. Arias found an "acute worsening" of Plaintiff's chronic back pain, with pain radiating to Plaintiff's buttocks and lower leg, tingling and numbness in her lower extremities, and cramps and charley horses in her arms and legs. (T 269)  At a follow-up visit on August 22, 2007, Dr.

Arias noted that Plaintiff had tried Cymbalta for pain and depression, and while it had "worked very well," Plaintiff could not afford the medication and requested samples of Lexapro. (T 267) Dr. Arias started Plaintiff on Gabapentin for pain management, noting that Plaintiff still suffered from chronic low back pain due to disc disease and that she complained of numbness in her hands and feet. (Id.) Plaintiff returned on November 12, 2007 to obtain medication refills. (T 266)

Dr. Arias' notes from 2008 and 2009 continue to reflect a worsening of Plaintiff's condition. (T 258-65) On March 4, 2008, Dr. Arias observed that Plaintiff experienced increased pain in both hands and persistent and worsening radicular pain accompanied by more frequent migraines. (T 265) On June 16, 2009, Plaintiff complained of sleeping problems as a result of body aches and "all over spasms" in her back, legs, and arms, and Flexeril "helps some [with the pain] and allows her to sleep some." (T 258)

On June 30, 2009, Dr. Arias opined that Plaintiff could lift less than ten pounds and could sit, stand, or walk less than two hours during an eight-hour day. (T 273) Further, Plaintiff needed a sit/stand option and an assistive device for ambulation and may sometimes need to lie down at unpredictable intervals. (Id.) Additionally, Plaintiff could never twist, stoop, bend, crouch, or climb ladders, could occasionally climb stairs, and would likely miss work more than four times per month. (Id.)

Luis Morales, ("Mr. Morales") a non-examining state agency single decision-maker ("SDM"), completed a physical RFC assessment on September 13, 2007. (T 210-17) Mr. Morales based his opinion on a diagnosis of disc herniations at L5-S1 and L4-5, referencing Dr. Arias' treatment notes to date and Plaintiff's 2005 MRI. (T 210-11) Mr. Morales opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and walk six

6

hours in an eight-hour workday, and sit six hours in an eight-hour workday. (T 211) Although Mr. Morales found that Plaintiff should never climb ladders, ropes or scaffolds, she could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. (T 212) Mr. Morales concluded that Plaintiff was "able to function within the confines of this RFC up to the [Date Last Insured] period." (T 215)

Debra Troiano, M.D. ("Dr. Troiano"), a non-examining state agency consultant, completed a physical RFC assessment on November 28, 2007, noting diagnosis of disc herniations at L5-S1 and L4-5 with radiculopathy and migraine headaches. (T 232-39) Relying on Dr. Arias' medical records and the 2005 MRI, Dr. Troiano opined that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently, stand or walk for two hours and sit for six hours in an eight-hour workday, and push and pull with limitation in the lower extremities. (T 233-34) Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl, but should never climb ladders, ropes or scaffolds. (T 234)

Dr. Troiano also recommended that Plaintiff avoid fumes and odors, so as not to exacerbate her migraines, and hazards, such as machinery and heights, due to Plaintiff's extreme back pain. (T 236) Dr. Troiano noted that Plaintiff's migraines were not well controlled and occurred daily, despite Plaintiff's use of Immitrex. (T 234) While acknowledging that Plaintiff's severe back pain and frequent migraines caused significant functional limitations, Dr. Troiano concluded that Plaintiff was capable of performing substantial gainful activity as of her date last insured. (T 233-34, 237)

**I.     Treating Physician's Opinion**

Plaintiff claims that the ALJ erred in failing to properly evaluate the opinions and medical records of her treating physician, Dr. Arias. (Dkt. 16 at 9-11)

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefore. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) (citation omitted). Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982) (citation omitted). "Good cause" exists when (1) the treating physician's opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). Rejection of a treating physician's opinion must be supported by clearly articulated reasons. Id. at 1241. However, it is for the ALJ, not the courts, to resolve possible inconsistencies in the evidence as long as substantial evidence supports the ALJ's decision. Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996) (citation omitted).

The ALJ may discount a treating physician's opinion if it is not well-supported by medical evidence or is inconsistent with the record as a whole. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004) (per curiam). Further, the weight afforded a physician's conclusory statements regarding a claimant depends upon the extent to which the statements are supported by clinical or laboratory findings and are consistent with other evidence of record. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam) (citation omitted). The ALJ may reject an opinion that is so brief and conclusory that it lacks persuasive weight or is unsubstantiated by any clinical or laboratory findings. Hudson v. Heckler, 755 F.2d 781, 784 (11th Cir. 1985) (per curiam) (citation omitted).

Contrary to Plaintiff's assertion, the ALJ fully considered the 2003 and 2009 opinions of Dr. Arias. (T 20-23) Affording Dr. Arias' opinions little weight, the ALJ found that the opinions

8

were outside the time frame for determining disability and the 2003 opinion is based, at least in part, on Plaintiff's subjective complaints. (T 23)

While Dr. Arias' 2003 and 2009 opinions essentially preclude Plaintiff from any type of full-time employment, Dr. Arias failed to provide any specific support for her findings, and her treatment records from the period at issue do not support her conclusions. (T 22-23)  Neither opinion is well-supported by the medical evidence from the relevant time period or consistent with other substantial evidence in the record.  As the ALJ observed, Dr. Arias was Plaintiff's primary care physician for many years before her injury, but Dr. Arias saw Plaintiff only four times during the five-month period at issue. (T 19, 193-95)

When asked to identify the medical findings in support of her 2003 opinion, Dr. Arias indicated "per patient symptoms," and "per patient's answers" and the diagnosis of multiple herniated discs. (T 276-77)  Given that Dr. Arias based her 2003 opinion at least partially on Plaintiff's subjective statements and completed the opinion nearly two years before the alleged onset date, the ALJ did not err in giving "little weight" to Dr. Arias' 2003 opinion. (T 23)  As for the 2009 opinion, it is nearly four years after the period at issue and does not indicate that the evaluation applies to the June 22, 2005 through December 31, 2005 time frame.  (T 273)  As such, the ALJ did not err in giving "very little" weight to Dr. Arias' 2009 opinion, which reveals nothing about Plaintiff's physical abilities in 2005.  (T 23)  Accordingly, good cause exists for the ALJ to discredit Dr. Arias' 2003 and 2009 opinions. See Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 873-74 (11th Cir. 2011) (finding that "[t]he ALJ articulated specific reasons for not giving [the treating physician's March 2007] opinion controlling weight, noting that the opinion was inconsistent with [the] treatment records and her ability to perform work between 1999 and 2004.").

Although Plaintiff argues that the ALJ failed to discuss Dr. Arias' treatment records (Dkt. 16 at 10), the ALJ's decision reveals that the ALJ repeatedly referred to Dr. Arias' medical notes, both generally and specifically, throughout his decision. (T 19-20, 22) Plaintiff refers specifically to Dr. Arias' March 28, 2005 opinion that Plaintiff was eligible for a disabled parking permit. (Dkt. 16 at 10) (T 197) Although the ALJ did not explicitly discuss the opinion regarding the disabled parking permit, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). Accordingly, any failure of the ALJ to discuss that statement does not indicate that he failed to consider such evidence. The ALJ did not err in discussing Dr. Arias' treatment records.

Asserting that her disc herniations, low back pain with radiculopathy, and migraines were present prior to 2006, Plaintiff also contends that the ALJ erred in observing that "there was some worsening of the claimant's condition in 2006." (Dkt. 16 at 11) (T 22) Plaintiff's argument is without merit. The ALJ's statement is consistent with the medical evidence and Plaintiff's testimony that her condition progressively worsened over time. (T 46, 202-07, 258-71)

As the ALJ did not err in evaluating Dr. Arias' opinions and treatment records, a remand on this issue is unwarranted.

**II.     Non-Examining State Agency Opinions**

Plaintiff states that the ALJ should not have credited the opinion of Mr. Morales, a non-examining state agency SDM, and that the ALJ improperly gave greater weight to the opinion of Dr. Troiano, a non-examining state agency physician, than to the opinion of Dr. Arias, Plaintiff's long-time primary care physician. (Dkt. 16 at 11-13)[4]

---

[4] The SDM designation connotes no medical credentials, and an SDM with no apparent medical credentials is not an "acceptable medical source" and is entitled to no weight. Siverio v. Comm'r

In assessing medical evidence in a disability case, the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) (citation omitted). The opinion of a non-examining, reviewing physician standing alone does not constitute substantial evidence. Sharfarz, 825 F.2d at 280 (citation omitted). However, it is not improper for an ALJ to consider the reports of consulting physicians, as long as the opinion of the treating physician is accorded proper weight. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam). If the ALJ articulates good cause for discrediting the treating and examining physicians' opinions, an ALJ is entitled to rely on a non-examining physician's opinion when it is consistent with the medical record and the treating and examining physicians' underlying clinical findings. Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 742-43 (11th Cir. 2011) (per curiam) (unpublished).[5]

The ALJ mistakenly referred to Mr. Morales as a physician and accorded significant weight to his opinion. (T 22) Mr. Morales based his opinion on his evaluation of Dr. Arias' treatment records and found Plaintiff able to perform light work through her date last insured. (T 210-17) Plaintiff argues that the ALJ erred by according significant weight to Mr. Morales' RFC assessment because Mr. Morales is not an acceptable medical source and does not have personal knowledge of Plaintiff. (Dkt. 16 at 12)

Although Plaintiff is correct that Mr. Morales' opinion is not entitled to any weight, the ALJ's mistake is harmless error. The ALJ did not rely solely on, or even adopt, the SDM's opinion. Cf. Siverio, 461 F. App'x at 871-72 (holding that the ALJ erred in relying solely on a

---

of Soc. Sec., 461 F. App'x 869, 871-72 (11th Cir. 2012) (per curiam) (unpublished); see 20 C.F.R. § 404.1513 (listing "acceptable medical sources").

[5] Unpublished opinions of the Eleventh Circuit of Appeals are not considered binding authority, however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

SDM's opinion without substantial evidence remaining in the record to support the RFC assessment). In fact, the ALJ afforded greater weight to the more restrictive opinion of Dr. Troiano, an acceptable medical source. (T 22-23) See Castel v. Comm'r of Soc. Sec., 355 F. App'x 260, 265 (11th Cir. 2009) (per curiam) (unpublished) (noting that an ALJ did not reversibly err by mistaking a SDM's opinion for that of a physician when he accorded more weight to an acceptable medical source's opinion). Although Mr. Morales' opinion was not entitled to any weight, the ALJ did not reversibly err in assessing Mr. Morales' opinion.

Additionally, Plaintiff contends that the ALJ erred by giving greater weight to the assessment of Dr. Troiano, a non-examining state agency consultant, than to the opinions of Dr. Arias, Plaintiff's long-time primary care physician. (Dkt. 16 at 12) The ALJ assigned significant weight to Dr. Troiano's opinion that Plaintiff could perform sedentary work through her date last insured. (T 23, 232-39)[6] As previously discussed, the ALJ demonstrated good cause for discrediting Dr. Arias' 2003 and 2009 opinions. (T 23) Furthermore, Dr. Troiano is an acceptable medical source and based her RFC assessment on Dr. Arias' medical notes and the July 2005 MRI. (T 232-39) The ALJ fully considered the record and properly determined that Dr. Troiano's opinion is consistent with objective medical records. (T 23) Plaintiff's assertion that Dr. Troiano's opinion is inconsistent with her notes merely because Dr. Troiano acknowledges Plaintiff's impairments is unpersuasive. (Dkt. 16 at 12) The ALJ did not err by giving greater weight to Dr. Troiano's assessment of Plaintiff's physical abilities than to Dr. Arias' 2003 and 2009 opinions.

---

[6] Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

The ALJ did not reversibly err in crediting Mr. Morales' opinion or in assigning significant weight to the opinion of Dr. Troiano. Substantial evidence supports the ALJ's determination that Plaintiff was not disabled during the relevant period. (T 24) It is for the ALJ to resolve any inconsistencies in the evidence, so long as substantial evidence supports the ALJ's decision. See Wolfe, 86 F.3d at 1079.

### III. Plaintiff's Credibility

Plaintiff contends that substantial evidence does not support the ALJ's credibility determination. (Dkt. 16 at 13-15) Specifically, Plaintiff asserts that the ALJ erred in finding Plaintiff's testimony inconsistent with the medical evidence and improperly relying on Plaintiff's ability to engage in a daily activity of short duration. (Id.)

The Eleventh Circuit has established a three-part standard to use when evaluating a claimant's complaints of pain and other subjective symptoms. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam). A plaintiff must show: (1) evidence of an underlying medical condition; and either (a) medical evidence which substantiates the severity of the pain from the condition; or (b) the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Id. Where an ALJ declines to credit a claimant's testimony as to pain, the ALJ must articulate explicit and adequate reasons for doing so. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (per curiam). A reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence in the record. Id. A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Id. (citation omitted).

Applying this standard, the ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms; however,

13

Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not credible to the extent it conflicted with the RFC assessment. (T 23)

At the administrative hearing, Plaintiff complained of migraine headaches, usually lasting three to eight days leaving her incapacitated for at least half of any given month; although medication somewhat helps alleviate Plaintiff's pain. (T 31, 41)  Plaintiff described constant muscle spasms and daily pain in her lower back and neck averaging, with medication, an eight to ten on a scale of one to ten. (T 42-43) After reporting that she can sleep only two to three hours at a time because of pain, Plaintiff stated that she needs to lie down most of the day to relieve pressure in her back and has "a lot of issues with depression." (T 39, 43-44)  Plaintiff testified that her condition has worsened since 2000. (T 46) As an example of her worsened condition, Plaintiff stated that she stopped going to garage sales at least "a couple of years" prior to the August 2009 administrative hearing. (T 46-47)

Despite Plaintiff's allegations of being incapacitated by "very severe back pain that does not respond to medication" and "debilitating migraine headaches lasting three-to-eight days," the ALJ concluded that the objective testing and treatment records from the period at issue "are simply not consistent with such claims." (T 22)  Additionally, the ALJ found that Plaintiff testified to "some shopping and social activities" compatible with an ability to work. (Id.)  As an example, the ALJ noted that Plaintiff "had enjoyed going to garage sales until a couple of years ago." (Id.)

Although Plaintiff cites Dr. Arias' treatment records from 2007 through 2009 in support of her subjective symptoms, the ALJ cited substantial evidence for discrediting Plaintiff's testimony. (Dkt. 16 at 14) (T 22)  The ALJ discussed the extensive medical evidence of record, including Plaintiff's 2005 MRI and treatment records from Dr. Arias over a five-year period. (T

14

19-23) The cited reports include numerous references to Plaintiff's migraines, depression, and herniated discs, but do not confirm that Plaintiff was as limited as she claimed during the relevant time period. (T 19-23, 28-47, 189-217, 232-39, 258-277)

Finding that Plaintiff's back pain, migraines, and muscle spasms increased after the date last insured for disability purposes, the ALJ concluded that Dr. Arias' treatment records after December 31, 2005 do not accurately reflect Plaintiff's condition as it existed during the relevant time period of June 22, 2005 through December 31, 2005. (T 22, 193-95, 202-07, 258-71) The ALJ observed that Dr. Arias' treatment records after the date last insured are consistent with Plaintiff's testimony that her condition deteriorated over time. (Id.)

As the ALJ discussed, Dr. Arias prescribed Plaintiff fairly conservative doses of medication and did not mention any of the extreme limitations present in Dr. Arias' 2003 and 2009 opinions. (T 22, 193-95) While Plaintiff walked with a cane, there is no evidence that a cane was actually prescribed. (T 22, 197, 199) Dr. Arias indicated in April 2004 that Plaintiff had normal arm and leg strength, and there is no record of diminution in strength through the end of 2005. (T 22, 193-200) Although Plaintiff alleged severe back pain, she told Dr. Arias in 2004 that she did not want surgery for her herniated disc. (T 22, 200) At the administrative hearing in 2009, Plaintiff stated that she was unsure if she would want surgery even if she could afford it. (T 22, 41) Accordingly, the medical evidence supports the ALJ's finding that Plaintiff's testimony is not entirely credible.

Plaintiff also submits that the ALJ improperly relied on Plaintiff's ability to go to garage sales in finding Plaintiff's testimony less credible. (Dkt. 16 at 15) The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997).

However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished).

The ALJ noted that Plaintiff testified to "some shopping and social activities" compatible with an ability to work, and provided as an example that "she had enjoyed going to garage sales until a couple of years ago." (T 22) Consistent with the ALJ's decision, Plaintiff's testimony reveals an ability to prepare meals, perform some household chores, watch television, go to the grocery store and garage sales, drive, and independently care for herself, although she needs help washing her hair. (T 22, 35-38, 47)

The ALJ did not rely solely on Plaintiff's ability to go to garage sales in finding Plaintiff not entirely credible. Rather, the ALJ relied on the objective medical evidence of record and Plaintiff's daily activities as a whole. (T 22) Thus, the ALJ did not err in relying in part on Plaintiff's daily activities in evaluating Plaintiff's testimony as to pain and other limitations.

As there was substantial evidence to support the ALJ's credibility determination, Plaintiff's arguments are without merit. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

## Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2)   The Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date: July 30, 2012**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  <u>See</u> 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge

17